UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA MAE HELM,
        Plaintiff,

Case No. 1:15-cv-0624

v.

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.
_____/

# OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Melissa Helm seeks review of the Commissioner's decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial

evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 99.) She completed high school as well as some college classes, and was previously employed as a telemarketer. (PageID.59, 84.) Plaintiff applied for benefits on April 30, 2012, alleging that she had been disabled since January 1, 2005, due to injuries related to a car accident and fall, multiple surgeries on her feet, pulled ligaments, contusions on her back, arthritis in her back, knees, and wrists, depression, anxiety, continued problems with her tail bone, a broken sternum, and an inability to straighten her right arm. (PageID.99, 196–201). Plaintiff's application was denied on August 29, 2012, after which time she

requested a hearing before an ALJ. (PageID.113–17, 120–22.) On November 8, 2013, Plaintiff appeared with her counsel before ALJ Michael Condon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.54–96.) In a written decision dated January 7, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.35–53.) On April 16, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (PageID.40.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) fractures of both feet status-post multiple foot surgeries including multiple right foot/little toe surgeries; (2) status-post right elbow fracture; (3) status-post fractured bone in right wrist; (4) history of alcohol and marijuana abuse; (5) depressive disorder, NOS; and (6) an anxiety disorder. (PageID.40.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.41–42.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to lift and carry, push and pull up to 5 pounds; sit for 6 hours total and stand and walk for up to 2 hours total in an 8-hour workday; limited to no climbing; can occasionally balance, stoop and crouch; but cannot kneel or crawl; requires the option to alternate sit and stand as needed; limited to no forceful gripping or grasping bilaterally and no fine manipulation bilaterally; limited to doing simple, routine work performed in a low stress work environment with no fast pace or production-rate quotas.

(PageID.42.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.47.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist

in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 3,200 jobs in the region and 118,000 jobs in the nation in the positions of inspector, private note clerk, and surveillance system monitor that an individual similar to Plaintiff could perform. (PageID.88–89, 96.) The ALJ determined that this represented a significant number of jobs. (PageID.48.) *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from April 30, 2012, through January 7, 2014. (PageID.54.)

## DISCUSSION

### 1. The ALJ Was Allowed to Rely on the VE's Testimony.

As noted above, at step five, the ALJ relied on the VE's testimony in determining that there were a significant number of jobs Plaintiff could perform. It is well settled that a VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). Plaintiff claims, however, that the ALJ could not rely on the VE's testimony for a number of reasons. The Court is not persuaded.

#### A. Plaintiff's RFC Does not Require a Finding of Disabled.

Plaintiff first claims that the ALJ erred in consulting a VE because he was required to find Plaintiff disabled under applicable social securing rulings. Specifically, Plaintiff argues that because she was limited to less than a full range of sedentary work with additional limitations on her gripping, grasping, and manipulation, the ALJ was required, under SSR 83-14, to find Plaintiff disabled. Plaintiff misreads the

ruling.[2]

Plaintiff relies on a hypothetical from the medical vocational guidelines (grids) that is discussed in SSR 83-14. That hypothetical stated "[s]ince the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h) (2000). Plaintiff's reliance on this example, however, is misplaced for two reasons. First, the example no longer exists; in 2001, the Commissioner deleted the hypothetical without replacement. *See* Federal Old-Age, Survivors and Disability Insurance; Determining Disability and Blindness; Revision to Medical-Vocational Guidelines, 66 Fed. Reg. 45,162, 45,164 (Aug. 28, 2001). Second, even if the example had not been deleted, it does not stand for the proposition for which Plaintiff uses it. The Commissioner, in deleting the hypothetical, noted that it had been misconstrued–as Plaintiff does here–and stands only for the proposition that when using the grids as a framework, "a conclusion of 'disabled' may be, but is not necessarily, warranted for younger individuals who do not have the residual functional capacity to do a full range of sedentary work." *Id.* The Sixth Circuit similarly concluded as much. *See Jones v. Comm'r of Soc. Sec.*, 23 F. App'x 339, 340 (6th Cir. 2001) ("We conclude that the example in § 201.00(h) does not mandate a finding of disability. The example merely shows that an administrative law judge (ALJ) is not precluded from finding disability where a claimant cannot perform a full range of

---

[2]Social Security Rulings (SSR's) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006).

sedentary work.").

In her reply brief, Plaintiff notes that SSR 83-14 states that the "bulk of unskilled sedentary jobs requires bilateral manual dexterity." (PageID.763) (citing SSR 83-14, 1983 WL 31254, at *4 (S.S.A. 1983)). While this may be so, it does not mean, as Plaintiff asserts, that she must automatically be found disabled. The ruling, rather, clarifies how the grid rules provide a framework for decisions where, as here, an individual has both a severe exertional impairment and a nonexertional limitation or restriction. SSR 83-14, 1983 WL 31254, at *1. SSR 83-14 provides in relevant part:

> A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of "Not disabled." On the other hand, an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of "Disabled."
>
> Use of a vocational resource may be helpful in the evaluation of what appear to be "obvious" types of cases. In more complex situations, the assistance of a vocational resource may be necessary . . . . Vocational experts may testify for this purpose at the hearing and Appeals Council levels.

*Id.* at *3–4. Thus, "the general rule in this circuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (citing *Burton v. Secy. of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir.1990)). This is precisely where vocational expert testimony is appropriate, and what the ALJ did here. *See Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). In this case, in response to a hypothetical question regarding a person of Plaintiff's age, and with her RFC, education, and work experience, the VE testified

that there were approximately 3,200 jobs in the region and 118,000 jobs in the national that the hypothetical person would be capable of performing. (PageID.88–89). It is well settled that a VE's opinion, given in response to an accurate hypothetical, is sufficient to satisfy the substantial evidence test. Accordingly, this claim of error fails.[3]

### B. Plaintiff's RFC Was Sufficiently Specific.

Plaintiff secondly claims that the ALJ's RFC failed to specify how frequently Plaintiff would need to alternate between sitting and standing and accordingly failed to follow the direction required in SSRs 83-12 and SSR 96-9p. The Court finds no error.

It is true, as Plaintiff points out, that SSR 83-12 states "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983). In addition SSR 96-9p notes that "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). Plaintiff claims that her RFC, which allowed for an "as needed" frequency for shifting positions between standing and sitting was not specific enough for SSR 96-9p. (PageID.742.) The Court disagrees. Indeed, the Court finds that the frequency here is unambiguous: Plaintiff must be able to shift positions at will. The ALJ did not err by failing to further detail this limitation. *See Perry v. Comm'r of Soc. Sec.*, No. 3:09CV1847, 2010 WL 7366775,

---

[3]Though not further detailed in his brief, Plaintiff cites SSR 96-9p in his claim of error for the same proposition he raises above. The Court notes that like SSR 83-14, SSR 96-9p merely advises an ALJ to consult with a VE in such situations. *See Groves v. Comm'r of Soc. Sec.*, No. 3:11-CV-105, 2012 WL 10385, at *8 (S.D. Ohio Jan. 3, 2012) ("[T[he mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability.") (quoting SSR 96-9p).

at *4 (N.D. Ohio Sept. 27, 2010) (collecting cases). Plaintiff presents no authority requiring an ALJ to be more precise, and accordingly this claim of error is rejected.[4]

> C. Substantial Evidence Supports the ALJ's Conclusion that there Exists a Significant Number of Jobs Plaintiff can Perform.

As noted above, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones*, 336 F.3d at 474. The statute regulating the determination of whether a claimant can perform other work in the national economy is found at 42 U.S.C. § 423(d)(2)(A), which provides that:

> (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). Similarly, 20 C.F.R. § 404.1560(c)(1), provides that such other work "must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)."

---

[4] Though not raised by Plaintiff, the Court notes a discrepancy between the hypothetical given to the VE, which provided for alternating between sitting and standing every fifteen minutes, and the RFC that was ultimately adopted which included an arguably more restrictive limitation for shifting position as needed. (PageID.42, 88). It is not readily apparent that this difference would have changed the VE's testimony. In an earlier hypothetical, the ALJ included a limitation for "as needed" shift between standing and sitting. (PageID.87.) The VE responded with the same number of jobs as he did in the subsequent hypothetical. (PageID.87–89) The Court declines to address this issue sua sponte.

In order to satisfy the step-five burden, the ALJ consulted a VE at the hearing. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As the Sixth Circuit explained, this requirement can be met by looking to the jobs available in either the regional economy or the national economy:

> The Social Security Act, as amended, provides that "work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis added). The Commissioner is not required to show that job opportunities exist within the local area. *Dressel v. Califano*, 558 F.2d 504, 508–09 (8th Cir.1977).

*Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir.1999).

As noted above, the VE identified three jobs constituting 3,200 positions in the region and 118,000 positions in the nation as those jobs Plaintiff could perform, and the ALJ determined such was a significant number of jobs.[5] (PageID.48, 88–89, 96.) The gist of Plaintiff's claim is that the 3,200 regional positions identified by the ALJ and VE is too small. (PageID.744.) In support of this claim, Plaintiff relies on *Cain v. Comm'r of Soc. Sec.*, No. 1:14-CV-463, 2015 WL 4393987, at *8 (W.D. Mich. July 16, 2015). In that case, Magistrate Judge Brenneman found that 450 positions in the State of Michigan and 12,400 positions in the nation were not a significant number of jobs. According to Plaintiff, the difference between 450 and 3,200 is inconsequential when compared to the over four million jobs in the state. (PageID.744.)

In *Cain*, Judge Brenneman cited a number of reasons that the total jobs in the region and nation did not amount to a significant number. In addition to the relatively small number of jobs, Judge Brenneman

---

[5] Both the Commissioner and Plaintiff erred in noting that the VE identified only 1,950 jobs in the region. (PageID.744, 752.)

noted the VE was only able to identify two jobs as positions Plaintiff could perform, and also noted the specialized nature of one of these positions–a final assembler of optical goods. *Id.* Courts "cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Instead "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* The judge may consider factors such as: vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.* This is what Judge Brenneman did in *Cain*.

Here, consideration of these factors cuts the other way. The VE in this case was able to identify three jobs in response to the ALJ's hypothetical, consisting of over 3,000 positions in the state, and 118,000 positions in the nation–well above the number in *Cain*. The positions of inspector, clerk, and surveillance system monitor are also not so isolated or of the type such that one might expect the availability of such work to be sparse. An ALJ "must tailor the determination of what is significant to the facts of each claimant's case." *Taskila v. Comm'r of Soc. Sec.*, No. 15-2224, 2016 WL 1533996, at *4 (6th Cir. Apr. 15, 2016). The Court finds the ALJ has done so here, and substantial evidence supports his decision that a significant number of jobs exist that Plaintiff is capable of performing.

### 2.     Substantial Evidence Supports the ALJ's Step-Three Determination.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. At step three of the sequential disability analysis, the ALJ must determine whether a claimant's

impairments meet or equal a listed impairment. Here, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment. (PageID.41–42.) In so doing, the ALJ identified several specific listings, including Listing 1.02. Plaintiff claims, however, that the ALJ "failed to properly consider" whether Plaintiff met Listing 1.02A. It appears Plaintiff argues that the ALJ's analysis was insufficient to allow a reviewing Court to perform a proper judicial analysis. (PageID.742–43.) The Court disagrees.

The Court first notes that Plaintiff was represented by counsel at the administrative hearing. However, Plaintiff's counsel did not argue to the ALJ either in a pre-hearing brief or at the hearing that Plaintiff satisfied the requirements of Listing 1.02. Thus, this is not a circumstance in which the ALJ failed to address an argument with which he was specifically presented. *See, e.g., Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13-CV-1303, 2015 WL 505805, at *5 n.2 (W.D. Mich., Feb. 6, 2015) (noting that a relevant issue when assessing an ALJ's step three analysis is whether the claimant presented to the ALJ a claim or argument that he satisfied a particular listing).

Moreover, the Sixth Circuit has concluded that the failure by an ALJ to provide extensive reasoning at step three is not, by itself, grounds for relief. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) ("[W]e decline Forrest's invitation to extend *Wilson* to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where [the Plaintiff] did not argue at the hearing that he met a particular listing."). As the *Forrest* court further observed, the ALJ's failure to provide detailed analysis at step three is no basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366. There is "no need to require the ALJ to spell out every fact a second time." *Id.* Here, the ALJ discussed the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Listing 1.02.

(PageID.43–47.) While the decision may not be organized as Plaintiff would prefer, such is not a basis for disturbing the ALJ's conclusion.

Furthermore, the *Forrest* court recognized that any error with respect to the ALJ's step-three analysis is harmless unless a claimant can establish that she satisfied the listing in question. *Id.* The medical record in this case belies any argument by Plaintiff that she satisfies the listing. Section 1.02 of the Listing of Impairments provides in relevant part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02. It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *see also Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 787 (6th Cir. 2010). The listing must be read as a whole and Plaintiff had the burden of demonstrating that she met all parts of the listing. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002). Here, Plaintiff fails to point to any evidence regarding a major dysfunction of a joint and proceeds straight to the last requirement of an inability to ambulate effectively. Plaintiff's claim can be rejected on this basis alone for failing to demonstrate she meets *all* aspects of the listing. Moreover, substantial evidence does not support the Plaintiff's argument that she is unable to ambulate effectively. The relevant regulation provides the following

guidance regarding the inability to ambulate:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1) (internal citations omitted). The evidence pointed to by Plaintiff does not demonstrate that she is unable to ambulate without the use of a device that limits the functioning of both her upper extremities. (PageID.364, 366, 369–70, 700, 703, 706, 714.) As Plaintiff admits she only "sometimes" uses crutches. (PageID.743.) Such does not demonstrate an inability to ambulate effectively. Accordingly, Plaintiff's claim of error is denied.

### 3. The ALJ Failed to Properly Assess the Medical Opinion of Dr. VanderMolen.

On August 19, 2013, Dr. Laura VanderMolen filled out a physical and mental RFC assessment. Among other things, Dr. VanderMolen concluded that Plaintiff could sit for one to two hours in an eight-hour workday, and stand and walk for one to two hours in the workday. Plaintiff further would have limitations in pace and concentration, would need an at will sit/stand option, would likely miss three days of work per month, and would need breaks as symptoms dictate. (PageID.688.) Dr. VanderMolen also opined that Plaintiff would have mild to moderate limitations regarding her ability to make occupational adjustments, none to mild limitations in making performance adjustments, none to moderate limitations in making personal/social adjustments, and moderate to marked functional limitations. (PageID.712–14.) The ALJ assigned the opinion "reduced weight" noting that it was inconsistent with the findings of diagnostic testing, Plaintiff's minimum and conservative treatment, a lack of participation in physical or injection

therapy, and a lack of recent surgeries. (PageID.46.) Plaintiff claims that in this, the ALJ failed to provide "good reasons" for giving the opinion less than controlling weight. Here, the Court agrees.

The treating-physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed Dr. VanderMolen qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188 at *5 (S.S.A. July 2, 1996)) This requirement "ensures that

15

the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id. (quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

The flaw the Court finds in the ALJ's analysis of Dr. VanderMolen's opinion is that while the ALJ considered Dr. VanderMolen's opinion at Exhibit 12F, he failed to consider Dr. VanderMolen's opinion at Exhibit 15F, noting only later in his decision that Dr. VanderMolen had provided mental limitations. (PageID.46.) The latter opinion contains many limitations that were not addressed by ALJ–including opinions regarding Plaintiff's physical condition, such as his physical capabilities decreasing his concentration and his use of a cane. (PageID.713–14.) While the ALJ may have adopted some of the mental considerations, the ALJ did not address the physical limitations in the latter opinion that were inconsistent with the RFC, nor provide good reasons for rejecting such. Accordingly, the Court finds the ALJ has failed to provide good reasons for discounting the opinion of Dr. Vandermolen and this matter must be remanded for further consideration.

### 4.     Remand is Appropriate.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof

of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also, Brooks*, 531 F. App'x at 644. This case is being remanded because the ALJ failed to provide good reasons for rejecting Dr. VanderMolen's opinion, not because there is compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, including Dr. VanderMolen's August 19, 2013 opinion.

Dated: June 17, 2016         /s/ Paul L. Maloney
                             PAUL L. MALONEY
                             United States District Judge